**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ROBIN MILLER, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br>v.<br><br>CITIZENS FINANCIAL GROUP, INC., CITIZENS BANK, N.A., and CITIZENS BANK OF PENNSYLVANIA,<br><br>    Defendants. | Civil Action No. 1:17-cv-12352 |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................2

ARGUMENT............................................................................................................................3

    A.    Citizens' Licensure Requirements Were Preconditions to the Licensed Banking Roles And Therefore Study Time Was Not Compensable..............................3

        1.    Licensed Bankers Had To Pass Licensing Exams As A Precondition For Employment or Promotion ..........................................................................4

        2.    No Productive Work Was Performed During Study Time, Which Was Performed Primarily for the Licensed Bankers' Benefit ..................................6

    B.    Study Time Was Not Compensable Under Any Other FLSA Test ..............................7

        1.    Study Time Was Not Compensable Under the Training Test ..........................8

        2.    Study Time Was Not Compensable Under the Special Situations Test ..........10

CONCLUSION.......................................................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ballou v. Gen. Elec. Co.*,
　433 F.2d 109 (1st Cir. 1970) ........................................................................................3, 4, 6

*Bienkowski v. Northeastern Univ.*,
　285 F.3d 138 (1st Cir. 2002) .........................................................................................4, 6, 7

*Carter v. Mayor & City Council of Balt. City*,
　Civil Action No. WMN-07-CV-3117, 2010 WL 761210 (D. Md. Mar. 2,
　2010) ...............................................................................................................................5, 6

*Chao v. Tradesman Int'l Inc.*,
　310 F.3d 904 (6th Cir. 2002) .........................................................................................4, 6, 9

*Dade Cty., Fla. v. Alvarez*,
　124 F.3d 1380, 1385 (11th Cir. 1997) ...............................................................................10

*Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc.*,
　98 F. Supp. 3d 750 (E.D. Pa. Apr. 8, 2015) ........................................................................4

*Price v. Tampa Elec. Co.*,
　806 F.2d 1551 (11th Cir. 1987) .......................................................................................7, 9

*Steiner v. Mitchell*,
　350 U.S. 247 (1956) .............................................................................................................3

*Walling v. Portland Terminal Co.*,
　330 U.S. 148 (1947) .............................................................................................................3

*Whyte v. Suffolk Cty. Sheriff's Dep't*,
　16-P-751, 2017 WL 2274618 (Mass. App. Ct. May 24, 2017) ...........................................4

**STATUTES**

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ..............................3, 4, 7

**OTHER AUTHORITIES**

29 C.F.R. § 785.27 ...................................................................................................................7, 8

29 C.F.R. § 785.29 ......................................................................................................................9

29 C.F.R. § 785.31 ..........................................................................................................7, 10, 11

Les A. Schneider & J. Larry Stine, Wage and Hour Law: Compliance & Practice,
    § 6:23 (2017) ............................................................................................................................7

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards
    Act (Sept. 9, 1996) ...............................................................................................................9, 10

## INTRODUCTION

Three former employees of Citizens Bank ("Citizens") seek to recover under state and federal wage-and-hour law on the basis that Citizens did not compensate them for time spent outside of regular working hours studying for licensing tests that they were required (by law) to pass in order to for them to perform duties as "Licensed Bankers." For purposes of this motion, Citizens does not deny these allegations. But on the undisputed facts and binding First Circuit precedent, Citizens' policy of not compensating Licensed Bankers' study time outside of regular working hours was entirely lawful.

Over the last half century, the Supreme Court has developed a foundational principle of wage and hour law: not every activity that an individual performs for an employer constitutes compensable "work." For instance, in some circumstances, individuals may be "trainees" rather than "employees," and in others, activities may not be sufficiently integral or indispensable to their primary activities to constitute "work." The First Circuit has since developed a doctrine for the specific circumstance in which an employer requires an employee to attend training or pass an examination as a prerequisite of the employment. After all, if an employer could have chosen to hire only candidates who *already* possessed the necessary license or certification, an employer should not be required to compensate for study time simply because it chose to hire its employees *before* they obtained the necessary licensure. The First Circuit's test regarding the compensability of "precondition" training applies precisely to the scenario presented in this case. The licenses for which the employees were studying were fully disclosed preconditions of their employment or promotion; if the employees could not pass the requisite tests, they could not perform the corresponding licensed duties of their jobs and thus could not remain in those licensed positions.

Accordingly, under the First Circuit's test (and, in fact, under *any* compensability test that could possibly apply), Citizens' decision not to compensate self-study time for the licensure

exams was lawful, and the evidence in the record raises no factual disputes suggesting the contrary. Citizens is therefore entitled to summary judgment.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

As relevant here, Citizens (a collective term for the Defendants) is a retail bank that provides an extensive range of financial services to customers in multiple states. (*See* Declaration of Hildur Kidney, ¶ 3, dated April 24, 2018 ("Kidney Decl.").)  In addition to teller services, retail branch staff (known as "bankers") provide retail banking services such as opening checking accounts and facilitating mortgage loans.  (*Id.*)

Citizens also offers recommendations and advice on securities and other investments; the bankers who are permitted to advise on such services and products are referred to as Licensed Bankers (as opposed to "retail bankers" or "personal bankers," who offer only retail banking products).  (*Id.*) As the name implies, the Financial Industry Regulatory Authority ("FINRA") and state law mandate that bankers who make recommendations or sales on investment products first obtain various licenses.[1]  (*Id.* at ¶ 4.)  The more types of products and services the banker seeks the ability to recommend, the more licenses are required. As a starting point, Licensed Bankers must obtain the Series 6 and 63 licenses, as well as a Life and Health Insurance license specific to the state in which they are employed.[2] (*Id.* at ¶¶ 5-6; *see also* Miller Decl. at ¶ 5; Grey Decl. at ¶ 5; Alemaskin Decl. at ¶ 5; Brooks Decl. at Exs. 2, 3, 11.)[3]  If a Licensed Banker

---

[1] Because FINRA and state law impose the license requirements, these licenses may be used to work at any other financial institution.  (Kidney Decl. at ¶¶ 4, 10).

[2] For the purposes of this submission, the term "Licensed Banker" includes individuals in the position of both Licensed Banker as well as Associate Licensed Banker, since Citizens has changed the titling structure over time. (Kidney Decl. at ¶ 5.)

[3] "Miller Decl.", "Grey Decl.", and "Alemaskin Decl." refer to the Named Plaintiffs' declarations submitted in support of Plaintiffs' Motion for Conditional Certification at Dkts. 29-5, 29-6, and 29-7 respectively. "Brooks Decl." refers to the Declaration of Molly Brooks in support of Plaintiffs' Motion for Conditional Certification, Dkt. 29.

accepts a promotion to the position of Senior Licensed Banker, a role that involves duties requiring further additional licensure under federal law, he or she must obtain the Series 65 or 66 license. (Kidney Decl. at ¶¶ 5-6.) When an employee obtains additional licenses, he is upgrading and advancing his skill set.  Thus, at Citizens, the Licensed Banker position is a promotion in title and pay from a retail banking position, and the Senior Licensed Banker position is a promotion in title and pay from Licensed Banker. (Kidney Decl. at ¶ 7.)

In order to assist employees in obtaining the requisite licenses, Citizens gives them access to studying materials created by an independent third party, Kaplan Test Prep ("Kaplan"), including study books, video lectures, and practice questions. (*See* Kidney Decl. at ¶ 8.)   Some Licensed Bankers studied for the examinations outside of regular working hours, and did not receive compensation for that time (though others, depending on their manager, were compensated for studying during regular working hours). (*See* Kidney Decl. at ¶ 9; *see also* Miller Decl. at ¶ 8; Grey Decl. at ¶ 8; Alemaskin Decl. at ¶ 8.)

## ARGUMENT
### A. Citizens' Licensure Requirements Were Preconditions to the Licensed Banking Roles And Therefore Study Time Was Not Compensable.

The First Circuit has repeatedly held that training time for prerequisite licenses or certifications need not be compensated.  Building on the principle that compensation is owed only for pre- and postliminary activities that are "integral and indispensable part of the [employee's] principal activities," *see Steiner v. Mitchell*, 350 U.S. 247, 256 (1956), and that "trainees" who are the primary beneficiaries of the training activities are not to be considered "employees" to whom compensation is owed under the FLSA, *see Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), the First Circuit long ago contributed another subchapter to this doctrine.  In *Ballou v. Gen. Elec. Co.*, 433 F.2d 109, (1st Cir. 1970), the Court held that employees hired before the completion of their training for mandatory licensure are not owed compensation for time spent studying for that licensure. *Id.* at 111-12.  Because employees were

acting as students and *not* as employees when they attended mandatory training, time spent in that training was not compensable under the FLSA.[4]  *Id.*

The First Circuit further refined this test (the "Precondition Test") in *Bienkowski v. Northeastern Univ.*, 285 F.3d 138 (1st Cir. 2002), when the Court determined that time spent by employees fulfilling EMT certification requirements, even after they had already been hired, was not compensable. The Court noted that because the employer could have made the successful attainment of the certificate a precondition of employment, and because the employees performed no productive work during their training sessions, the time spent attending classes in preparation for their exam was not compensable under the FLSA. *Id.* It did not matter that the individuals were employees who performed other work, not requiring the EMT certification, while also studying for the EMT certification outside of work hours. *Id.* The analogous facts in this case lead to the same outcome.

      1.      <u>Licensed Bankers Had To Pass Licensing Exams As A Precondition For Employment or Promotion.</u>

In *Bienkowski*, the First Circuit held that because an employer "could simply make the successful attainment of [the] certificate a precondition of employment," the Court would decline to hold the employer "liable for overtime pay for time its employees spend as students, rather than as workers, simply because [the employer] has decided to hire its employees on a probationary basis." 285 F.3d at 141; *see also Chao v. Tradesman Int'l Inc.*, 310 F.3d 904, 910 (6th Cir. 2002) ("We do not see why the employer should be penalized for allowing a potential employee to begin earning income while striving to meet certain prerequisites for the job when the employer could just as easily withhold employment until successful completion of all the job

---

[4] Massachusetts and Pennsylvania track the FLSA for purposes of analyzing compensable work. *See, e.g. Whyte v. Suffolk Cty. Sheriff's Dep't*, 16-P-751, 2017 WL 2274618, at *1 (Mass. App. Ct. May 24, 2017); *Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc.*, 98 F. Supp. 3d 750, 756 (E.D. Pa. 2015).

requirements."); *Carter v. Mayor & City Council of Balt. City*, Civil Action No. WMN-07-CV-3117, 2010 WL 761210, at *5 (D. Md. Mar. 2, 2010) (invoking the First Circuit's test and finding that because the employer "could have required the Plaintiffs to obtain the licenses before hiring them" but instead "allowed Plaintiffs to obtain the license while they were concurrently employed and funded the training," study time was not compensable).

The same conclusion applies here. Although Citizens initially hired or promoted individuals into Licensed Banker positions before they attained the requisite licensure, those positions were purely probationary. (*See* Miller Decl. at ¶ 5; Grey Decl. at ¶ 5; Alemaskin Decl. at ¶ 5; Brooks Decl. at Exs. 2, 3, 11; Kidney Decl. at ¶¶ 4 - 6.) Federal and state law prohibited these employees from performing any Licensed Banker duties without the requisite licenses, and they were confined to retail banking duties until they obtained the appropriate licenses. (*Id.*; *see also* Declaration of Molly Brooks, Dkt. 29 ("Brooks Decl.") at Exs. 2, 11.) Similarly, although an employee could be promoted to the Senior Licensed Banker position[5] before obtaining the Series 65 or 66 license, federal law did not permit them to perform their additional licensed duties until obtaining the appropriate licensure. (*See* Kidney Decl. at ¶ 6.) Unless Licensed Bankers and Senior Licensed Bankers obtained the appropriate licensure within a certain period of time, the employee would be required to seek out a different role at the Bank that did not require the licensure at issue. (*Id*.)

Thus, because Citizens could always have declined to hire or promote individuals without licenses, and because Citizens appropriately "compensates its [employees] in their status as

---

[5] None of the Named Plaintiffs held the position of Senior Licensed Banker during their tenure at Citizens, although the Verified Complaint alleges that Citizens' policy was unlawful as it pertained to Senior Licensed Bankers, as well as the other relevant positions. (*Compare* Complaint at ¶1 *with* Miller Decl. at ¶ 1, Grey Decl. at ¶ 1, Alemaskin Decl. at ¶ 1.) Notwithstanding Plaintiffs' lack of standing to bring claims on behalf of Senior Licensed Bankers, in the interest of disposing of Plaintiffs' claims in full, this memorandum nonetheless analyses the legality of Citizens' policy as it pertains to Senior Licensed Bankers as well as Licensed Bankers.

workers but does not compensate them in their status as students," *Ballou*, 433 F.2d at 112, the time that Licensed Bankers spent studying for these examinations is not compensable. *Id.*

    2.    <u>No Productive Work Was Performed During Study Time, Which Was Performed Primarily for the Licensed Bankers' Benefit.</u>

*Ballou* and *Bienkowski* further reasoned that study time was not compensable because no "productive work" was performed during the study periods. *Ballou*, 433 F.2d at 111; *Bienkowski*, 285 F.3d at 141. In *Bienkowski*, for instance, the court found that taking review classes and exams did not constitute "productive work" for the employer. *Id.* at 139, 141; *see also Chao*, 310 F.3d at 910 (attending evening classes did not constitute productive work for purposes of compensability analysis). When studying, Citizens' bankers did not perform productive work, either. They worked during the day opening checking accounts and providing other banking services that did not require licenses, for which they were paid, and then they went home to study (which included reading study materials, watching videos, and taking practice questions—not performing productive banking duties). (*See* Kidney Decl. at ¶¶ 3, 8; *see also* Miller Decl. at ¶ 4; Grey Decl. at ¶ 4; Alemaskin Decl. at ¶ 4.) Just as in *Ballou* and *Bienkowski*, Citizens was not required to pay these employees for study time that involved no productive work.

In the course of adopting the First Circuit's analysis, some courts have considered the additional requirement that the study time be primarily for the benefit of the employees. *See, e.g. Carter*, 2010 WL 761210, at *5; *Chao*, 310 F.3d at 906, 907. Even if the First Circuit applied this additional requirement, which *Ballou* and *Bienkowski* do not, Citizens' policy meets it as well. The licenses not only allowed employees a promotion in title and pay grade, but gave them a portable qualification that they could use at any financial institution, just like any other general qualification or educational degree. (*See* Kidney Decl. at ¶¶ 7, 10.) *See Carter*, 2010 WL 761210, at *5 (employees were primary beneficiaries where they "obtained a license fully

- 6 -

transferable to their employment with any other employer that required [the same license]"). Citizens, by contrast, received only the incidental benefit of having licensed employees – the same benefit Citizens would have had if it had hired only individuals who already had their licenses. *See, e.g. Price v. Tampa Elec. Co.*, 806 F.2d 1551, 1552 (11th Cir. 1987) ("incidental" benefit to employer of having licensed employees did not outweigh greater benefits to employees).

### B. Study Time Was Not Compensable Under Any Other FLSA Test.

While the First Circuit's test is dispositive, there are two other tests theoretically available to assess whether study time is compensable: the U.S. Department of Labor's regulation regarding training activities, 29 C.F.R. § 785.27 (hereinafter "the Training Test"), which exempts time spent in training that meets certain requirements, and a third test that offers a further exception to the Training Test (29 C.F.R. § 785.31, hereinafter "the Special Situations Test"). The First Circuit rejected both of these tests, and instead designed the Precondition Test, because neither the Training Test nor the Special Situations Test considered a situation in which the licensure or exam was constructively a precondition of employment. *Bienkowski* held that the Training Test was not "meant to cover the peculiar situation" in which "the training is not continuing education relating to existing job duties, but instead a pre-condition for employment which the employer tolerantly allows to be satisfied while the employee is working on a probationary basis," and further found that any other holding would be "inconsistent with *Ballou*'s reading of the statute and precedent." 285 F.3d at 141; *see also* Les A. Schneider & J. Larry Stine, Wage and Hour Law: Compliance & Practice, § 6:23 (2017) (describing Training Test but noting that "if the training is a precondition for employment. . . the time is noncompensable even if the employee has already commenced performing productive work"). Accordingly, because this case similarly involves allegations regarding study time for licenses that were preconditions of employment and promotion, the Precondition Test is the correct test,

and the only test, to apply to this case. Even if the Court were to apply the Training Test or Special Situations Test, however, the result would be the same.

        1.      <u>Study Time Was Not Compensable Under the Training Test.</u>

The Training Test provides that "[a]ttendance at lectures, meetings, training programs and similar activities need not be counted as working time" if the following four criteria are met: (a) attendance is outside regular working hours; (b) attendance is in fact voluntary; (c) the course, lecture, or meeting is not directly related to the employee's job; and (d) the employee does not perform any productive work during such attendance. 29 C.F.R. § 785.27. Citizens' policy not to compensate for self-study time meets these requirements.

*<u>First</u>*: the Complaint by its terms challenges only the nonpayment of study time outside of the employee's regular working hours. 29 C.F.R. § 785.27; Class and Collective Action Complaint (Dkt. 1) ("Complaint") at ¶¶ 13; *see also* Plaintiffs' Motion for Conditional Certification (Dkt. 28) at 2 ("To prepare sufficiently for these examinations, LBs were required to work well beyond their scheduled shifts, including preparing in their homes in the evenings and on weekends."). To the extent employees were permitted to study during regular working hours, that time was compensated, and Plaintiffs' declarations make no contrary claim. (*See, e.g.*, Miller Decl. ¶ 6, 8 ("we were not permitted to record any time spent preparing for our exams **outside of a 40-hour schedule** under any circumstances. . . . [i]t was common knowledge at our branch that **overtime** hours worked to prepare for licensing exams was to be done off-the-clock, without compensation") (emphasis added); *see also* Grey Decl. ¶ 8; Alemaskin Decl. ¶ 8.) Citizens' policy of unpaid self-study time plainly satisfies the Training Test's first requirement that the uncompensated training at issue take place outside regular working hours.

*<u>Second</u>*: a banker's decision to study for the licensure tests was voluntary. Courts consider studying and training to be voluntary under the Training Test, where training is effectively a "precondition" if the training requirement was fully disclosed to the employee, so

that the employee can knowingly and voluntarily make the decision to take on the position. *See, e.g.*, *Chao*, 310 F.3d at 910 ("voluntariness" requirement satisfied where training was a fully disclosed condition); *Price*, 806 F.2d at 1552 (studying was voluntary because employee knowingly decided to accept the position requiring the enrollment in training courses). As Plaintiffs' own submissions demonstrate, there is no dispute that all bankers were told in advance that they were required to obtain the appropriate licenses before they could perform the corresponding duties. (*See* Miller Decl. at ¶ 5; Grey Decl. at ¶ 5; Alemaskin Decl. at ¶ 5; *see also* Brooks Decl. at Exs. 2, 11.) Individuals hired or promoted into the Senior Licensed Banker positions received the same advance notice. (Kidney Decl. at ¶ 4.) Plaintiffs therefore knowingly and voluntarily chose to accept positions that would require them to pass licensing exams (presumably in light of the increase in pay and title compared to roles in retail banking). (Kidney Decl. at ¶ 7.)

The DOL also has clarified that training time is voluntary "where a State requires individuals to take training as a condition of employment." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act (Sept. 9, 1996). There can be no doubt that Citizens' policy therefore satisfies this factor of "voluntariness", where the licensing requirements are imposed by federal and state law. (Kidney Decl. at ¶ 4.)

*__Third__*, the bankers' study time was not "directly related" to their jobs. The DOL defines that requirement as follows:

> Where a training course is instituted for a bona fide purpose of preparing for advancement through upgrading the employee to a higher skill, and is not intended to make the employee more efficient in his present job, the training is not considered directly related to the employee's job even though the course incidentally improves his skill in doing his regular work.

29 C.F.R. § 785.29. Citizens requires employees to pass licensing examinations in order to advance and upgrade bankers' education, such that they are capable of performing the new "higher skills" requiring licensure under state and federal law. (Kidney Decl. at ¶ 4.) The

training for licensure was not intended to make the bankers more efficient in their non-licensed duties of opening checking accounts and so forth; it was designed to provide new knowledge that would be used in selling licensed products.

Moreover, courts interpreting the Training Test have found that training is not directly related to a job where the training does not require the employee to "acquire or develop a skill unique to their employment" at that one particular job. *Dade Cty., Fla. v. Alvarez*, 124 F.3d 1380, 1385 (11th Cir. 1997). Here, it is undisputed that all licenses at issue could be used at any other financial institution. (Kidney Decl. at ¶ 10.)

**_Fourth_**, as explained above (*see supra* p. 6), bankers performed no productive work while studying.

Thus, while the First Circuit applies the Precondition Test rather than the Training Test on facts like these, the result is the same: because any uncompensated studying performed by Licensed Bankers and Senior Licensed Bankers took place outside regular working hours, was performed on a voluntary basis, did not directly relate to their existing jobs, and did not entail productive work, Citizens' policy was lawful.

2. <u>Study Time Was Not Compensable Under the Special Situations Test.</u>

The Special Situations Test goes even further than the Training Test, holding training time non-compensable even where the training is "directly related" to the job. As detailed in 29 C.F.R. § 785.31, training sessions are not "hours worked" so long as an employee voluntarily attends a program of instruction established "for the benefit of his employees" that "corresponds to courses offered by independent bona fide institutions of learning." *See also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act (Sept. 9, 1996). The preceding analysis of Citizens' policy under the Precondition Test and Training Test resolves most of these requirements: bankers make the voluntary decision to study for their examinations (*see supra* pp. 8-9) and obtaining the licenses gives them a portable educational achievement that

qualifies them for jobs at any financial institution and that corresponds to a promotional increase in pay and title (*see supra* 6-7).

Citizens' policy also satisfies the Special Situations Test's requirement that the training be the same "type of course as is offered at an institution of learning." 29 C.F.R. § 785.31.  The study program Citizens made available to employees is created by and run by Kaplan, an independent bona fide third party education company. (Kidney Decl. at ¶ 8.) Moreover, the Kaplan course is the same type of course as college courses designed to prepare students for passing the FINRA licensing exams.  *See* Regenbogen Decl. at Ex. 1 (compiling exemplar course listings/descriptions for courses preparing students to pass FINRA examinations from various college/university websites).

Accordingly, it does not matter which test this court uses to determine if the study time outside of regular working hours is compensable.  The undisputed facts establish that Citizens' policy of not paying employees for their study time dedicated to legally mandated licensure examinations outside regular working hours is lawful under the First Circuit's well established Pre-Condition Test as well as the Training Test and the Special Situations Test.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court grant summary judgment for the Defendants on all of Plaintiffs' claims and enter judgment in favor of the Defendants.

| | |
|---|---|
| Dated: April 27, 2018 | Respectfully submitted,<br><br>CITIZENS FINANCIAL GROUP, INC., CITIZENS BANK, N.A., and CITIZENS BANK OF PENNSYLVANIA<br><br>By their attorneys,<br><br>*/s/ Samantha L. Regenbogen*<br>Mark W. Batten (BBO #566211)<br>Samantha L. Regenbogen (BBO #690763)<br>PROSKAUER ROSE LLP<br>One International Place<br>Boston, MA  02110<br>Tel:  (617) 526-9600<br>Fax:  (617) 526-9899<br>mbatten@proskauer.com<br>sregenbogen@proskauer.com |

## CERTIFICATE OF SERVICE

I hereby certify that, on April 27, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will cause a copy of the foregoing document to be served upon Counsel for the Plaintiffs.

*/s/ Samantha L. Regenbogen*
Samantha L. Regenbogen