UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBIN MILLER, et al., Individually and on Behalf of All Others Similarly Situated, | * * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 1:17-cv-12352-IT * |
| CITIZENS FINANCIAL GROUP, INC., CITIZENS BANK, N.A., and CITIZENS BANK OF PENNSYLVANIA, | * * * * |
| Defendants. | * |

MEMORANDUM AND ORDER

February 5, 2020

TALWANI, D.J.

I.    Introduction

Plaintiffs Robin Miller, Richard Grey II, and Stan Alemaskin allege that Citizens Financial Group, Inc., Citizens Bank, N.A., and/or Citizens Bank of Pennsylvania (collectively, "Citizens") failed to pay overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and Massachusetts and Pennsylvania state wage laws, for time Plaintiffs spent outside of regular work hours studying for required licensing exams.[1] On Defendants' Motion for Summary Judgment [#44], the court finds that Defendants are not entitled to summary judgment under the regulations promulgated by the Department of Labor

---

[1] Plaintiffs bring this suit individually and on behalf of others. On the parties' stipulation, the court tolled the FLSA statute of limitations as of April 10, 2018, for claims of potential plaintiffs who may seek to opt-in pursuant to 28 U.S.C. § 216(b).

("DOL"), but that Defendants' motion is nonetheless ALLOWED under controlling First Circuit precedent.

II.     Background

Viewing the evidence in the light most favorable to Plaintiff as the non-moving party, the summary judgment record is as follows.

Citizens is a retail bank that provides financial services to customers, including both retail banking services and licensed banking services. Pls.' Response to Defs.' Statement of Undisputed Facts and Counterstatement of Material Facts ("Pl's 56.1 Resp.") ¶ 4 [#82]. Retail bankers exclusively perform retail banking services, such as opening checking and savings accounts and assisting with customers' needs. Id. ¶¶ 4, 6. During the relevant period, Licensed Bankers, such as Plaintiffs Robin Miller, Richard Grey II, and Stan Alemaskin, performed retail banking duties and additional services, and are paid at a higher pay grade and have a more senior title than employees in retail banker positions. Id. ¶ 5; Defs' Resp. to Pls' Counterstatement of Facts ("Defs' 56.1 Resp.") ¶ 13 [#86].[2]

Licensed Bankers included employees who have obtained a Series 6 license, a Series 63 license, and Life and Health Insurance licenses specific for the state in which they are employed, and employees who have not yet obtained these licenses. Pl's 56.1 Resp. ¶ 6 [#82]; Defs' 56.1 Resp. ¶ 14 [#86]. Employees in the Licensed Banker position who were not fully licensed were required to develop a "basic awareness of core investment products." Pl's 56.1 Resp. ¶ 14 [#82]. They also made investment referrals but are not permitted to perform licensed banking services

---

[2] Citizens changed job titles over time to reflect subcategories of Licensed Bankers, but for purposes of this motion, both sides use the term "Licensed Bankers" to refer to the position held by Plaintiffs. See Pl's 56.1 Resp. ¶ 5 [#82]; see also Defs. Statement of Undisputed Facts 1 n.1 [#86].

directly. Id. ¶¶ 18-19. Licensed Bankers who obtained the required licenses could advise on securities and other investment products. Defs' 56.1 Resp. ¶ 13 [#86].

Citizens informed employees when they were hired or promoted into the Licensed Banker position that they were required to obtain a Series 6 license, a Series 63 license, and Life and Health Insurance licenses for their state if they did not already have those licenses. Pl's 56.1 Resp. ¶¶ 5-6 [#82]. Citizens also informed them that the licenses were a condition of their employment in the Licensed Banker position and that they would be subject to demotion or termination if they failed to obtain the licenses. Defs' 56.1 Resp. ¶ 21 [#86].

Citizens expected Licensed Bankers who were not fully licensed to study outside of branch hours to prepare for their licensing exams and did not compensate them for studying outside of regular working hours including when studying occurred beyond a 40-hour workweek. Id. ¶¶ 22-24.[3] Citizens provided Licensed Bankers study materials created by Kaplan, a test preparation company. Pls.' 56.1 Resp. ¶ 8 [#82].

Individuals who obtained their licenses were not limited to using the licenses at Citizens but could potentially use those licenses to perform licensed banking duties at other financial institutions. Id. ¶ 10. Employees who were unable to pass the licensing examinations within a certain period of time were permitted to seek a demotion to a non-licensed job at Citizens or otherwise would be terminated. Id. ¶ 6; Defs' 56.1 Resp. ¶ 21 [#86].

---

[3] In 2017, Citizens introduced the Paid Study Program, which compensated Licensed Bankers for up to 40 hours of time spent studying. Defs' 56.1 Resp. ¶¶ 26, 32 [#86]. Additional study time remained uncompensated.

III.     Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a summary judgment motion, the court views the evidence in the light most favorable to the non-moving party and resolves any disputes of material fact in their favor. See Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008). A "genuine dispute" is one that, based on the evidence submitted at this stage of litigation, "a reasonable jury could resolve ... in favor of the non-moving party," and a "material fact" is one that has "the potential to affect the outcome of the suit under the applicable law." Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (citations and quotation marks omitted). If further inquiry into the facts is necessary to apply the relevant law, summary judgment is not appropriate. Mandel v. Bos. Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006).

The moving party is responsible for identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a disputed material fact, the burden shifts to the non-moving party to set forth "specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986).

IV.     Analysis

The parties do not dispute the material facts related to training time for the Licensed Bankers, namely that Citizens did not compensate the Licensed Bankers for time they spent outside of regular working hours studying for their licensing exams. Plaintiffs assert that this practice violated the law; Defendants contend that its practice is legal, whether the court analyzes the practice under either of two DOL tests or under First Circuit case law. The court begins with

4

the DOL tests and then turns to First Circuit case law.

  A. The DOL Regulation Concerning Employee Training

  The first Department of Labor regulation cited by Defendants presents the general rule for whether training hours for employees are to be considered "hours worked" for purposes of the FLSA. The regulation provides that:

> Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:
>
>  (a) Attendance is outside regular working hours;
>
>  (b) Attendance is in fact voluntary;
>
>  (c) The course, lecture or meeting is not directly related to the employee's job; and
>
>  (d) The employee does not perform any productive work during such attendance.

29 C.F.R. § 785.27. The Licensed Banker training at issue satisfies the first and last factor, but not the second and third factor.

  On the first factor, Defendants contend that all of the hours at issue here occurred outside of Plaintiffs' regular working hours, as any time spent studying during working hours was compensated. Plaintiffs argue in response that some study hours occurred during their unpaid lunch break. Plaintiffs fail to explain, however, why an "unpaid lunch break" would be a "regular working hour" under the regulation. As this action seeks compensation for hours Plaintiffs spent studying outside of their regular compensated work schedule, Defendants have established that the hours at issue here are "outside regular working hours."

  On the last factor, Plaintiffs do not dispute that employees do not perform productive work during the training.

On the second factor, voluntariness, Defendants do not dispute for purposes of summary judgment that the outside studying was required for employees in the Licensed Banker position or that employees would be demoted or terminated from the Licensed Banker position if they did not study and pass the required license exams. Citizens argues that the outside studying nonetheless was "voluntary" because the requirements were disclosed to Plaintiffs before they accepted the position. Under the DOL regulations, training is not "voluntary" if the employee's attendance "is required by the employer." 29 C.F.R. § 785.28. Moreover, training is not voluntary "if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance." Id. The regulation includes no such exception for a pre-employment disclosure of mandatory training.

Defendants also cite a DOL opinion letter to argue that if the requirement is imposed by the state, the training would be voluntary. The cited letter concluded that where a state "requires individuals to take training as a condition of employment with any employer in the child care field" and "the employer does not impose additional requirements on the employee, such as taking a particular course(s)," the training is voluntary. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, 1996 WL 1031798, at *1 (Sept. 9, 1996). Here, however, while the licenses may be required by state or federal law before employees may provide certain discrete services, Defendants have not shown that the state requires the licenses as a condition of employment in the Licensed Banker position created by Citizens. Moreover, Citizens does require that its employees take particular courses. For these reasons, Defendants have not demonstrated on summary judgment that the voluntary prong of the regulation is met.[4]

---

[4] The parties do not address the question of whether an individual employee's choice to spend

The regulation provides additional guidance on the third prong, differentiating between training that "is designed to make the employee handle is job more effectively as distinguished from training him for another job, or to a new or additional skill." 29 C.F.R. § 785.29. The regulation provides further that "[w]here a training course is instituted for the bona fide purpose of preparing for advancement through upgrading the employee to a higher skill, and is not intended to make the employee more efficient in his present job, the training is not considered directly related to the employee's job even though the course incidentally improves his skill in doing his regular work." Id. Under this regulation, the critical question is whether the training is for the employee's current position or for the employee's advancement. Here, if Citizens had offered the training to employees in a lower job category, such as retail bankers, and had promoted them to Licensed Bankers after they completed the training, the third prong would have been satisfied as the training would have been to upgrade the employee to a higher skill. But by requiring that the employees complete the training and pass the examination to stay in their Licensed Banker position, the training must be viewed as intended to help the Licensed Bankers handle their present job more effectively. Accordingly, the court does not find the third prong met on the summary judgment.

For the above reasons, Citizens is not entitled to summary judgment based on the DOL's employee training regulation.

B. The DOL Regulation Concerning Special Situations Test

Citizens argues that it is also entitled to summary judgment based on the DOL's special situations test. Under 29 C.F.R. § 785.31, time spent in training, even if directly related to an

---

additional self-study time beyond the minimum outside study hours needed to complete the Kaplan program should be considered "voluntary." If the case went to trial, this issue would need to be addressed.

7

employee's job, may not be considered hours worked where the course of instruction "corresponds to courses offered by independent bona fide institutions of learning." But this test also requires "voluntary attendance." Id. As explained above, the voluntary requirement has not been met here. For this reason, Citizens is not entitled to summary judgment based on the DOL's Special Situations test.

    C.  The First Circuit's Precondition Test

Defendants also rely on a "precondition test" set forth in two First Circuit cases as a basis for their summary judgment motion. In Ballou v. General Electric Co., 433 F.2d 109 (1st Cir. 1970), apprentices hired by General Electric were not compensated for time spent in outside classwork required by their employer. In Bienkowski v. Northeastern Univ., 285 F.3d 138 (1st Cir. 2002), Northeastern University police officers were not compensated for training and study time outside of their regular working hours to obtain a state Emergency Medical Technician (EMT) certificate. 285 F.3d at 139-40. In each case, a panel of the First Circuit upheld summary judgments on FLSA claims in favor of the employers. Defendants contend that these precedential decisions mandate summary judgment here.

Plaintiffs argue first that those decisions only apply to trainee or apprentice employees and Plaintiffs here do not fit into those categories. However, the Bienkowski court explicitly declined to limit Ballou's holding to cases involving an apprenticeship program. 285 F.3d at 141-42. Instead, the Court found the fact that the employer mandated completion of training as a condition of employment was a reason to find the training time non-compensable. 285 F.3d at 141 ("we will not hold Northeastern liable for overtime pay for time its employees spend as students, rather than as workers, simply because Northeastern has decided to hire its employees on a probationary basis until they complete the training required to hold the job on a permanent

8

basis"). Here, as in both Ballou and Bienkowski, Plaintiffs were subject to termination or demotion if they did not achieve licensure within a range of time. Defs' 56.1 Resp. ¶ 21 [#86]. Study time was a condition of employment and this condition was communicated to new hires or employees newly promoted at the time of offer. Pls' 56.1 Stmt. ¶ 24 [#82]. Plaintiffs only could get out from under this de facto probationary status by receiving their licenses and there is no evidence in front of the court that Licensed Bankers could stay in that position indefinitely without having passed their required licensing exams. Id. at ¶ 6. See also Ex. 6 (Pls.' Opp'n Mem.) 3-5 [#83-1] (stating in the offer letter that new hires had 60 days to obtain licenses and would otherwise have 90 days to find alternative role within company if the employee failed to pass the exams). Accordingly, Plaintiffs are not able to differentiate their circumstances based on job titles.

Plaintiff's second argument is that their study time is in fact "integral and indispensable" to the principal work of the position. Here, the court is limited when considering this argument by the First Circuit's analysis.

Under the First Circuit's application of this test, what matters is whether the employees did "productive work" for the employer while studying. Bienkowski, 285 F.3d at 141; Ballou, 433 F.2d at 111. While Plaintiffs could successfully argue that there is a question of material fact as to whether their studying directly related to the retail banking position in question, the question posed by the First Circuit test is whether the employee, at the time of study, was acting in a way that directly and immediately benefitted the employer. In Ballou, the apprentices learned the theoretical context of their job, which the court found to be insufficiently directly beneficial to the employer to deem the study time work. 433 F.2d at 111-12. In Bienkowski, the police officers were not allowed to perform EMT work until they had completed their

certification and so, even if they learned something in training that benefitted their police job, the court held that they did no productive work for the employer while studying. 285 F.3d at 140-41. Plaintiffs concede that the tasks they performed were limited until they passed their licensing exams and the information they learned while studying was not used until they became fully licensed. Pls.' 56.1 Stmt. ¶ 6 [#82]. Like in Bienkowski, the non-licensed Licensed Bankers were not able to perform certain duties until actually licensed. Id.

The court thus agrees that summary judgment is required based on these precedential decisions. As in Ballou and Bienkowski, Citizens hired or promoted employees into the position at issue before they completed certain training and on the condition that they would participate in the mandatory training and obtain certain licenses. And under the test as articulated in those cases, the fact that the employees performed a valuable role during their regular work hours that may have been enhanced by the training does not matter.

The validity of this First Circuit test, however, may be ripe for reconsideration. The First Circuit concluded in Ballou that, "it is consistent with the spirit of both the Portal-to-Portal Act and the [FLSA] to say that as a matter of law, the principal activity of the apprentices as employees is the work that takes place during their regular 40 hour work-training week and that activity as students pursuing their required courses of study is neither integral nor indispensable to that principal activity." 433 F.2d at 112. The First Circuit thus held that "apprentices are entitled to be compensated at the minimum wage for the productive work content of their activities but not for the educational or training content which was for their own benefit." Id. Similarly, in Bienkowski, the First Circuit concluded that under the Portal-to-Portal Act, "the time spent by the plaintiffs in EMT training is not an integral and indispensable part of the principal activities for which they are employed," and accordingly, that the Portal-to-Portal Act

precludes a finding of liability. 285 F.3d at 142. See also id. at 141 ("employer's decision to hire its employees *before* the completion of training did not obligate it to compensate them for the time spent in their status as students after their hiring.") (emphasis in original) (citing Ballou, 433 F.2d at 112).

The reliance on the Portal-to-Portal Act may be misplaced. The Portal-to-Portal Act was passed as a reaction to the Supreme Court's decision in Anderson v. Mt. Clemens Pottery Co., which had held that time employees spent walking from timeclocks to their respective places of work was compensable under FLSA. 328 U.S. 680 (1946). See also IBP, Inc. v. Alvarez, 546 U.S. 21, 34 (2005). The relevant part of the Act provides that an employer is not liable for failure to pay wages or overtime compensation for "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform" or "(2) activities which are preliminary to or postliminary to said principal activity or activities which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a); see Integrity Staffing Solutions, Inc. v. Busk, 574 U.S. 27, 38 (2014) ("the Portal-to-Portal Act of 1947 is primarily concerned with defining the beginning and end of the workday") (Sotomayor, J., concurring).

The Supreme Court explained shortly after the Portal-to-Portal Act was adopted that while Congress intended to outlaw claims for activities performed before or after work, "it did not intend to deprive employees of the benefits of the [FLSA] where they are an integral part of and indispensable to their principal activities." Steiner v. Mitchell, 350 U.S. 247, 255 (1956). The Supreme Court has reiterated that "the term 'principal activity or activities'" under the Portal-to-Portal Act "embraces all activities which are 'an integral and indispensable part of the

11

principal activities.'" IBP Inc., 546 U.S. at 29-30 (quoting Steiner, 350 U.S. at 252-53). "[T]he Portal-to-Portal Act does not remove activities which are "integral and indispensable" to "principal activities" from FLSA coverage precisely because such activities are themselves "principal activities." Id. at 33 (quoting Steiner, 350 U.S. at 253). See also Integrity Staffing, 574 U.S. at 34 (collecting cases and DOL regulations).

The Department of Labor regulations specifically provide that "[a]n employer's liabilities and obligations under the [FLSA] with respect to the 'principal' activities his employees are employed to perform are not changed in any way by [the Portal-to-Portal Act], and time devoted to such activities must be taken into account in computing hours worked to the same extent as it would if the Portal Act had not been enacted." 29 C.F.R. § 790.8 (citing DOL regulations, including the § 785 training regulations discussed above).

Ballou noted that under Walling v. Portland Terminal Co., 330 U.S. 148 (1947), and a companion case, Walling v. Nashville, Chattanooga & St. Lois Railway, 330 U.S. 158 (1947), if individuals were required to complete a future employers' training program before they could be employed, they would be entitled to no compensation under the FLSA. 433 F.2d at 111. Though the court cites these cases, the First Circuit ignored the Supreme Court's reasoning for denying FLSA coverage, noting simply that these decisions were both litigated before the enactment of the Portal-to-Portal Act of 1947, 29 U.S.C. § 254(a). Id. Given that the Portal-to-Portal Act did not change principal activities under the FLSA, Portland Terminal Co. should not be ignored.

In Portland Terminal Co. the Supreme Court reasoned that while the FLSA defines employment and employee broadly, these definitions could not be extended so broadly "to make a person whose work serves only his own interest an employee of another person who gives him aid or instruction." 330 U.S. at 152 (emphasis added). Where the employer received "no

'immediate advantage' from <u>any</u> work done by the trainees," the Court found that the trainees "are not employees." Id. at 153 (emphasis added). Non-employees, the Court explained, are not covered by the FLSA, as the applicable section "only relates to learners who are in 'employment.'" Id. at 152.

The Supreme Court stated further, however, that "[w]ithout doubt the Act covers trainees, beginners, apprentices, or learners <u>if they are employed to work for an employer for compensation</u>." Id. at 151 (emphasis added). As to trainees or learners who are also employees, the FLSA explicitly allowed the DOL to grant special certificates for employment of such employees in order to increase their opportunities for gainful employment, without allowing a "blanket exemption" in terms of statutory coverage that "might have left open a way for wholesale evasions." Id. The Supreme Court therefore draws a line between employees who engage in training (who are to be compensated for the training), and persons who "without promise or expectation of compensation, but solely for his personal purpose or pleasure," engage in training provided by a potential future employer. Id. at 152.

Ballou found the Supreme Court's distinction between the requirements for employee and non-employee learners illogical, asserting that "[t]he fact that in addition to such a [training] program, [the employer] also provides work-training for which it pays well above the minimum wage would not seem to be sufficient to require" the employer to pay for times spent in classroom study. 433 F.2d at 112. But this view of the workplace includes an assumption that the employer gains nothing from the training of current employees. The employer's responsibilities to its shareholders and its bottom line make it unlikely that that is so.

Considering an employer's options helps elucidate the issue. If training is necessary for a position, an employer can choose only to hire individuals who have already completed the

13

training. This option would not have required training hours at all. The record does not show whether Citizens did not choose this option because of generosity to those without licenses, as the First Circuit assumes, or because it was unable to hire individuals who already had the required licenses without offering higher pay, or for some other reason. Alternatively, an employer can hire employees without training and offer them a promotion if they voluntarily complete the training. Training in those circumstances would not have needed to be paid under the DOL training test as it would have been voluntary and would have provided skills for advancement. The record does not show whether Citizens did not choose this option because it did not want to risk having a larger number of untrained employees who chose not to study for the licenses, or for other reasons. The final alternative is the one Citizens chose: hiring probationary employees and requiring them to complete the training or face termination. This may have allowed Citizens to hire employees at a lower wage than hiring fully licensed employees, while ensuring that these employees gained skills for the existing jobs. But if the training was directly related to the Licensed Banker position at issue, as appears to be the case here, the training is integral and indispensable to the principal activities of the position and therefore compensable under the FLSA and the DOL regulations.

V.     Conclusion

This court is bound by precedent. Eulitt v. Maine, 386 F.3d 344, 349 (1st Cir. 2004). Accordingly, for the aforementioned reasons, under Ballou and Bienkowski, Defendants' Motion for Summary Judgment [#44] is ALLOWED.

IT IS SO ORDERED.

February 5, 2020                                         /s/ Indira Talwani
                                                    United States District Judge